## THE ATKINS HUGHES.

### THE ALSENBORN.

(District Court, E. D. Pennsylvania. March 22, 1902.)

#### No. 16.

TOWAGE—VALIDITY OF CONTRACT—SERVICES IN THE NATURE OF SALVAGE.

An agreement fixing the price to be paid for towing a vessel into port will not be set aside as exorbitant, although the price is considerably in excess of customary towage rates, where, owing to the perilous situation of the tow, which was unable to make headway against the seas, and the fact that there was no other tug in the vicinity which could have rendered assistance, the service was in the nature of a salvage.

In Admiralty. Suit to recover on a contract for towage services.

Horace L. Cheyney and John F. Lewis, for the Atkins Hughes.

Thomas Leaming, for the Alsenborn.

J. B. McPHERSON, District Judge. This suit is brought to recover the sum of $600, which the master of the steamship Alsenborn agreed to pay for the services of the tug Atkins Hughes in towing the steamship from a point upon the Atlantic Ocean, several miles north of the Capes of the Delaware, to the city of Philadelphia. The service was performed on February 7, 1901, when ice in considerable quantity was running down the river, and at some places interfered a good deal with navigation. The Alsenborn was coming down the

coast, bound for the port of Philadelphia. Her precise dimensions do not appear in the evidence, but it is manifest that she was not a large ship. She was high out of the water, drawing a foot or two forward, and about seven feet aft, and was carrying very little, if any, cargo. She encountered a high wind from the northwest on the night of February 6th, and was obliged to anchor in order to avoid being blown out to sea. Her engines were not powerful enough to enable her to keep up to the wind. On the morning of February 7th she lost her ground tackle, and the wind was carrying her steadily away from the land and from the mouth of the river. It is conceded that, if her movement seaward had not been stopped, she would speedily have been in great danger, perhaps of being overturned, but certainly of being injured, and probably wrecked, by the violence of the wind and waves. In this situation she signaled to the tug, which is a large, powerful, sea-going vessel, and was cruising about looking for ships to tow up the river, to come and give her aid. The tug responded, and when she came within hailing distance of the steamship the captains of the respective vessels began to bargain. The Alsenborn desired to be towed to Philadelphia, and offered $100 for the service. The captain of the tug asked $600, and this sum was finally accepted, after the steamship had offered $500 and this offer had been refused. By the agreement the tug was to furnish the hawser. The service was performed, the Alsenborn assisting by the use of her own steam; and the voyage lasted about 15 or 16 hours, which is the usual time required for towing from the breakwater to the city. At one place in the river the vessels were fast in the ice for some time, and, in consequence of the injury to the hawser done by the ice, a loss was thereby inflicted upon the tug of about $100. After the steamship came to her dock, her master approved a bill for the sum agreed upon, but payment was afterward refused upon the ground that the amount charged was exorbitant, and that the agreement was made under circumstances which left the steamship no choice. This is the only question for determination, and upon this point my conclusion is in favor of the libelant. Undoubtedly, if the service is to be regarded as no more than ordinary towage, the sum is much too large; for, while there appear to be no established rates for towage in the Delaware river during the winter months, enough has been proved concerning the amounts usually paid for towing to enable the court to say that, for an ordinary tow, $600 would be much in excess of the proper sum, even in the month of February. But when the danger to which the Alsenborn was exposed is taken into account, and the further facts that there was no other tug in the neighborhood by whom assistance could be rendered; that, even if she had been able to enter the Delaware, she had so little power that she could not have proceeded to Philadelphia under her own steam alone; and that the tug has suffered a loss of $100 in performing the service by reason of the injury to her hawser,—I think that the sum of $600 is not too large for the work that was done. The service may not have been technically salvage, but it certainly approached it closely, and I am clearly of opinion that the peril-

ous situation of the steamship is proper to be considered in deciding what compensation should be paid to the tug: The Elfrida, 172 U. S. 186, 19 Sup. Ct. 146, 43 L. Ed. 413.

A decree will therefore be entered in favor of the libelant for $600, with interest and costs.